REDPATH-PEREZ LAW
By: Kathleen Redpath-Perez, Esquire
PA Attorney ID No. 333326
805 Bunker Hill Avenue
Lawrenceville, NJ 08648
(732) 236-2964
Kathleen@RedpathPerezLaw.com
Attorney for Plaintiff, Asante Carter

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASANTE CARTER, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No. 2:26-cv-07693 |
| | : | |
| v. | : | CIVIL ACTION COMPLAINT |
| | : | |
| EQUINOX HOLDINGS, INC., and JOHN DOES 1-5 and 6-10, | : | JURY TRIAL DEMANDED |
| | : | |
| | : | |
| Defendants. | : | |

Plaintiff, Asante Carter, by and through his undersigned counsel, brings this Civil Action Complaint against Defendants Equinox Holdings, Inc. and John Does 1-5 and 6-10, and avers as follows:

**PRELIMINARY STATEMENT**

1. This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), to redress sexual harassment, a hostile work environment based on sex, and unlawful retaliation, including the retaliatory termination of Plaintiff's employment.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) and 42 U.S.C. § 2000e-5(f)(3), because Plaintiff's claims arise under the laws of the United States.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices alleged herein were committed in this District, where Plaintiff was employed at Defendant's fitness club in Philadelphia, Pennsylvania.

4. On June 17, 2026, Plaintiff filed a Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC"), Charge No. 530-2026-07428, alleging discrimination based on sex and retaliation, and requested that the charge be dual-filed with the Pennsylvania Human Relations Commission.

5. On or about July 8, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights as to that charge, which Plaintiff received on July 8, 2026. This Complaint is filed within ninety (90) days of Plaintiff's receipt of that notice, and Plaintiff has satisfied all administrative prerequisites to the filing of this action under Title VII.

## IDENTIFICATION OF PARTIES

6. Plaintiff, Asante Carter ("Plaintiff"), is an adult male who resides in Philadelphia, Pennsylvania.

7. At all relevant times herein, Plaintiff was an "employee" of Defendant within the meaning of Title VII, 42 U.S.C. § 2000e(f).

8. Defendant Equinox Holdings, Inc. ("Defendant" or "Equinox") is a Delaware corporation with its principal place of business at 31 Hudson Yards, 15th Floor, New York, New York 10001.

9. Defendant operates a fitness club known as Equinox Rittenhouse at 1907 Walnut Street, Philadelphia, Pennsylvania 19103, where Plaintiff was employed.

10. At all relevant times herein, Defendant was Plaintiff's employer, issued Plaintiff's pay statements, and employed more than five hundred (500) employees.

11. At all relevant times herein, Defendant was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

12. Defendants John Does 1-5 and 6-10, currently unidentified, are individuals and/or entities who, either directly or through the doctrine of respondeat superior, are answerable to Plaintiff for the wrongful acts described herein.

## GENERAL ALLEGATIONS

13. Defendant hired Plaintiff on or about August 9, 2025, as a Maintenance Associate, a housekeeping and maintenance position, at its Equinox Rittenhouse club in Philadelphia.

14. At all relevant times herein, Plaintiff was qualified for his position and performed his job duties up to or exceeding the legitimate, reasonable expectations of Defendant.

15. Beginning in approximately late September or early October 2025, Plaintiff was subjected to repeated sexual advances and other sexually harassing conduct by a co-worker, a personal trainer employed by Defendant at Equinox Rittenhouse and known to Plaintiff as Damir K.

16. All harassment alleged herein is alleged to be severe and/or pervasive.

17. All harassment alleged herein is especially egregious, in whole and in part.

18. All harassment alleged herein was because of Plaintiff's sex, inasmuch as it was sexual in nature and consisted of sexual advances directed at Plaintiff that were motivated by sexual desire.

19. The conduct was at no point invited or welcomed by Plaintiff.

20. The conduct was such that a reasonable person of the same sex in the same or similar circumstances would believe that the terms and conditions of employment had been altered and would view the workplace as having become hostile, intimidating, and/or abusive.

21. In fact, the workplace did so alter, and Plaintiff himself perceived it as hostile, intimidating, and/or abusive.

22. At all relevant times herein, Plaintiff's primary work area was the men's locker room.

23. On an almost daily basis, Damir K. stared and leered at Plaintiff in a prolonged and sexually suggestive manner.

24. On the gym floor, Damir K. made kissing gestures toward Plaintiff.

25. Damir K. followed Plaintiff through the facility as Plaintiff performed his work duties.

26. Damir K. repeatedly blocked Plaintiff's path and the entrance to and exit from Plaintiff's work area, causing Plaintiff to feel trapped and physically confined in his own workspace.

27. Damir K. stood in unusually close physical proximity to Plaintiff and, on multiple occasions, nearly made physical contact with him.

28. On one occasion, Damir K. approached Plaintiff and exposed Damir K.'s bare chest to Plaintiff in a sexual manner.

29. Damir K. loitered in Plaintiff's work area and undressed in the middle of the locker room's main walkway, rather than at a locker, while staring at Plaintiff.

30. Damir K. repeatedly pivoted and repositioned so that Plaintiff could not avoid Damir K. while performing his work, and stared at Plaintiff's private areas while doing so.

31. The conduct escalated over time and continued despite Plaintiff's efforts to avoid Damir K.

32. Plaintiff could not move freely through his work area or perform his ordinary work duties without encountering Damir K.

33. Plaintiff promptly and repeatedly reported this conduct to Defendant's management, in person, by electronic mail, and in meetings.

34. Plaintiff's reports were made to, among others, Assistant General Manager Josh May, General Manager Jillian Sheehy, Plaintiff's manager, Alexandra Rosario Puello, and Regional Director of People and Culture Myriam Hallak.

35. By reporting sexual harassment, Plaintiff engaged in activity protected by Title VII.

36. Despite Plaintiff's repeated complaints, Defendant did not take prompt and appropriate remedial action reasonably calculated to end the harassment.

37. Defendant did not conduct an adequate investigation into Plaintiff's complaints.

38. Defendant did not separate Plaintiff from Damir K. or take any other measure to prevent further harassment.

39. When Plaintiff reported an incident then occurring in the men's locker room to Ms. Puello, she declined to observe or investigate it.

40. In declining to do so, Ms. Puello cited a company policy that no woman, including a manager, could enter the men's locker room.

41. The men's locker room was the location where the majority of the incidents occurred, yet Defendant assigned no male manager to observe or investigate the conduct there.

42. Plaintiff requested reasonable measures to avoid further contact with Damir K., including the presence of a male manager during his shifts.

43. Plaintiff also requested reassignment of his work location to areas that the personal trainers could not or did not regularly access, such as the laundry room or the pool area.

44. Defendant did not grant these requests.

45. In or about mid-October 2025, Plaintiff met with members of Defendant's management regarding his complaints.

46. Defendant advised Plaintiff that it had found his complaints to be unsubstantiated.

47. Defendant reached that conclusion without thoroughly questioning Plaintiff about the incidents he had reported.

48. Despite Plaintiff's complaints and Defendant's purported investigation, Damir K. was undeterred and continued to sexually harass Plaintiff.

49. The conduct is the responsibility of Defendant because Defendant knew or should have known of the conduct through Plaintiff's repeated complaints to members of its management and failed to take steps to stop it.

50. The conduct is also the responsibility of Defendant because it delegated to members of its management the power and authority to control Plaintiff's workplace experience, which delegated authority those members abused.

51. The conduct is also the responsibility of Defendant because it failed to reasonably implement and enforce its policies prohibiting sexual harassment after receiving actual notice of Plaintiff's complaints.

52. On October 22, 2025, Plaintiff wrote to Defendant's management that he was a victim of sexual harassment at Equinox, that the behavior he had reported was continuing, and that he was asking only that Defendant uphold its policies prohibiting sexual harassment.

53. On or about October 22, 2025, Defendant assigned Plaintiff to work on the main gym floor, the primary work location of the personal trainers, including Damir K.

54. This assignment placed Plaintiff in direct and unavoidable proximity to the source of the harassment.

55. On that date, Damir K. again stared and leered at Plaintiff.

56. Plaintiff reported the conduct to the manager on duty and asked that it be reported to senior management.

57. On October 23, 2025, Plaintiff sent a written request to Ms. Hallak and Ms. Sheehy for "Domestic Violence, Sexual Assault or Stalking Victim Leave," a form of leave provided for in Defendant's employee handbook.

58. Plaintiff stated that the request related to the ongoing stalking and sexual harassment by the trainer that he had already reported to Defendant.

59. By requesting leave on the stated ground that he was being sexually harassed at work, Plaintiff again engaged in activity protected by Title VII.

60. Ms. Hallak directed Plaintiff to make the request through Defendant's third-party leave administrator.

61. Plaintiff promptly attempted to make the request as directed, through the leave administrator's web portal, by telephone, and, on October 25, 2025, by electronic mail.

62. On October 30, 2025, the leave administrator told Plaintiff that it had no option for the type of leave he had requested and could enter only a "personal leave" request.

63. On October 31, 2025, the leave administrator further told Plaintiff that it did not know whether it or Defendant was responsible for handling his request.

64. The next day, November 1, 2025, Plaintiff reported this to Ms. Hallak in writing. Ms. Hallak did not respond.

65. On November 18, 2025, Ms. Hallak wrote to Plaintiff that the leave administrator had denied his request for a leave of absence, that his absence from October 23 through November 18 was "considered an unapproved leave," and that he was to schedule a meeting to discuss his return to work.

66. The request that was denied was a "personal leave" request that Plaintiff had never made. Defendant never processed the leave he had actually requested.

67. Ms. Hallak's message did not address Plaintiff's complaints of sexual harassment.

68. On November 19, 2025, Plaintiff responded in writing that Defendant's handling of his leave request was retaliation for his complaints of sexual harassment.

69. By making that complaint, Plaintiff engaged in further activity protected by Title VII.

70. That same day, Ms. Hallak wrote to Plaintiff that he was expected to return to work on November 24, 2025, and that failure to return as scheduled or to provide documentation "may result in disciplinary action, up to and including termination of employment."

71. Before directing Plaintiff to return to work, Defendant did not advise him that it had taken any action to prevent further harassment or that the conditions that led to his leave request had changed.

72. On December 19, 2025, Defendant terminated Plaintiff's employment.

73. The Notice of Separation that Defendant sent to Plaintiff did not state a reason for the termination.

74. To the extent Defendant contends that it terminated Plaintiff because he did not return to work, Plaintiff's absence followed the unresolved sexual harassment, Defendant's failure to stop it, and Defendant's failure to process his leave request.

75. Before terminating Plaintiff, Defendant knew that his absence followed his complaints of sexual harassment, his harassment-related leave request, and Defendant's failure to process that request.

76. Any contention that Plaintiff was terminated for failing to return to work is pretextual and does not sever the causal connection between Plaintiff's protected conduct and his termination. Defendant would not have terminated Plaintiff but for his complaints of sexual harassment, his request for leave because of that harassment, and his complaint of retaliation.

77. The retaliatory termination is, as well, especially egregious and was undertaken by at least one member of Defendant's upper management.

78. Defendant's management, including its Regional Director of People and Culture, knew that federal law prohibits sexual harassment and retaliation against employees who report it.

79. Members of Defendant's management, acting in a managerial capacity and within the scope of their employment, acted with malice and/or reckless indifference to Plaintiff's federally protected rights, despite actual knowledge of Plaintiff's repeated complaints of sexual harassment and retaliation.

80. Because a member of Defendant's upper management participated in and/or was willfully indifferent to the conduct described herein, punitive damages are warranted.

81. Plaintiff has been caused to suffer both economic and non-economic losses as a result of the harassment and the termination.

## COUNT I

### Sexual Harassment and Hostile Work Environment Under Title VII

82. Plaintiff hereby repeats and realleges the foregoing paragraphs as though fully set forth herein.

83. For the reasons set forth above, Plaintiff was sexually harassed and subjected to a hostile work environment because of his sex in violation of Title VII, 42 U.S.C. § 2000e-2(a), and it is the responsibility of Defendants to be answerable to Plaintiff for all damages resulting therefrom.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly, severally and in the alternative, together with compensatory damages, punitive damages, interest, costs of suit, attorneys' fees, and any other relief the Court deems equitable and just.

## COUNT II

### Retaliation Under Title VII

84. Plaintiff hereby repeats and realleges the foregoing paragraphs as though fully set forth herein.

85. Plaintiff engaged in conduct protected by Title VII, 42 U.S.C. § 2000e-3(a), by repeatedly opposing and reporting sexual harassment, by requesting leave because of that harassment, and by complaining that Defendant's response was retaliatory.

86. Because of that protected conduct, Defendant subjected Plaintiff to materially adverse actions, including his assignment to the main gym floor, the denial of his leave request, the designation of his absence as "unapproved leave," the threat of discipline up to and including termination, and the termination of his employment.

87. There is a causal connection between Plaintiff's protected conduct and Defendant's materially adverse actions, and Defendant would not have taken those actions but for Plaintiff's protected conduct.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly, severally and in the alternative, together with compensatory damages, punitive damages, back pay, front pay, interest, costs of suit, attorneys' fees, and any other relief the Court deems equitable and just.

**COUNT III**

**Request for Equitable Relief**

88. Plaintiff hereby repeats and realleges the foregoing paragraphs as though fully set forth herein.

89. Plaintiff requests the following equitable remedies and relief in this matter.

90. Plaintiff requests a declaration by this Court that the practices contested herein violate Title VII.

91. Plaintiff requests that this Court order Defendants to cease and desist all conduct inconsistent with the claims made herein, both as to Plaintiff and as to all other individuals similarly situated.

92. Because Plaintiff was separated from employment and that separation is contested herein, Plaintiff requests equitable reinstatement, with equitable back pay and front pay.

93. Plaintiff requests that all lost wages, benefits, fringe benefits and other remuneration also be equitably restored to Plaintiff.

94. Plaintiff requests that the Court order Defendants to pay costs and attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k).

95. Plaintiff requests that the Court order Defendants to alter their files so as to expunge any reference which the Court finds violates the statute implicated herein.

96. Plaintiff requests that the Court do such other equity as is reasonable, appropriate and just.

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly, severally and in the alternative, together with compensatory damages, punitive damages, interest, costs of suit, attorneys' fees, equitable back pay, equitable front pay, equitable reinstatement, and any other relief the Court deems equitable and just.

Respectfully submitted,

**REDPATH-PEREZ LAW**

By: /s/ Kathleen Redpath-Perez
Kathleen Redpath-Perez

Dated: October 6, 2026

**DEMAND TO PRESERVE EVIDENCE**

1. All Defendants are hereby directed and demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's cause of action and/or prayers for relief, to any defenses to same, and pertaining to any party, including electronic data storage, closed circuit television footage, digital images, computer images, cache memory, searchable data, electronic mail, spreadsheets, employment files, memoranda, text messages, entries on social networking sites and work-related websites, and any other information, data, things and/or documents which may be relevant to any claim or defense in this litigation.

2. Failure to do so will result in requests for spoliation sanctions and/or for appropriate adverse inferences.

Respectfully submitted,

**REDPATH-PEREZ LAW**

By: /s/ Kathleen Redpath-Perez
Kathleen Redpath-Perez

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**REDPATH-PEREZ LAW**

By: /s/ Kathleen Redpath-Perez
Kathleen Redpath-Perez